UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

SHERRY MOORE,

        Plaintiff,               Civil No.
                                             13-6614(NLH/JS)
v.
                                             **OPINION**

RAND BEERS, ACTING SECRETARY,
U.S. DEPT OF HOMELAND SECURITY,

        Defendant.

_____

**APPEARANCES:**

WILLIAM B. HILDEBRAND, LLC
36 TANNER STREET, SUITE 300
HADDONFIELD, NJ  08033
    On behalf of plaintiff

ANNE B. TAYLOR
ASSISTANT U.S. ATTORNEY
CAMDEN FEDERAL BUILDING
& U.S. COURTHOUSE
401 MARKET STREET, 4th FLOOR
CAMDEN, NJ  08101-2098
    On behalf of defendant

**HILLMAN, District Judge**

    This case concerns plaintiff's allegations of discrimination and retaliation in her employment as an Immigration Enforcement Agent for the United States Department of Homeland Security, Immigration and Customs Enforcement.  Pending before the Court is defendant's motion for summary judgment.  For the reasons expressed below, defendant's motion will be granted.

BACKGROUND

Plaintiff, Sherry Moore, is an African-American female who, since 1997, has been employed as an Immigration Enforcement Agent by the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), at the Marlton, New Jersey Sub-Office for Detention and Removal Operations.  Plaintiff has asserted claims pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., against defendant, the Secretary of DHS,[1] for conduct that she alleges constitutes unlawful race discrimination and retaliation.

Plaintiff's amended complaint[2] identifies two incidents of alleged discrimination that occurred between March and May 2006. Plaintiff claims that sometime between March and May 2006, her second-line supervisor, Christopher Croteau, who is Caucasian, ordered plaintiff and another African-American female employee

---

[1] At the time plaintiff filed her complaint, Rand Beers was the Acting Secretary of Homeland Security.  When defendant filed its motion for summary judgment, Jeh Johnson was the Secretary of Homeland Security.  With the recent change in administration, a new Secretary of Homeland Security, John F. Kelly, has been appointed.

[2] Previously, defendant moved to dismiss plaintiff's complaint. The Court noted that although counsel had appeared on behalf of plaintiff and had filed an opposition to defendant's motion to dismiss, plaintiff originally filed her complaint *pro se*.  The Court granted defendant's motion, but afforded plaintiff 30 days to file an amended complaint. (See Docket No. 15.)  Plaintiff did so, discovery was conducted, and defendant has now moved for summary judgment in his favor.

to transport a female detainee to her home in Camden, New Jersey in order for the detainee to breastfeed one of her four children.  Plaintiff claims that it was standard practice that ICE would inform the local police that ICE was going to be operating in the area to protect the ICE agents' safety. Plaintiff contends that her supervisors did not follow this procedure when plaintiff was ordered to transport the detainee in an easily identifiable white van with government tags to an area that was known for drug and gang activity.  Plaintiff claims that Caucasian employees were never given similar, unsafe assignments.

The second alleged discriminatory incident occurred in May 2006, when Croteau ordered plaintiff's direct supervisor, Adam Garcia, to assign her to three dangerous surveillance missions in Camden.  Plaintiff contends that she was stationed in a white government van, while agents from Fugitive Operations worked undercover in plain clothes and unmarked vehicles.  Plaintiff complained to her supervisors that the assignment was unnecessarily dangerous, but it was only until another employee complained about the dangerousness of the assignments that they were cancelled.

Plaintiff claims that she was placed on these assignments because she is African-American, and in retaliation of a race discrimination charge she filed with the EEOC in 2004 against

3

Croteau and Garcia.  Plaintiff also claims that other several incidents are evidence of discrimination.  These incidents, which occurred in 2004 – 2005, include: (1) not being given the chance to act as a supervisor while junior employees were offered that opportunity; (2) being assigned to return to a country in which she nearly died in a plane crash even though it was not her turn to escort; (3) receiving unjustified write-ups; (4) being denied overtime; (5) being forced to cover up for and perform the job duties of other employees; (6) being ordered out of buildings; (7) being yelled at in front of other employees; (8) being denied training; and (9) being denied favored assignments such as consulate runs.

    Defendant has moved for summary judgment on all of plaintiff's claims.  Defendant argues the two incidents involving plaintiff's travel to Camden are time-barred because she did not comply with the requirement that she contact an EEO counselor within 45 days of the alleged discriminatory actions.  Defendant further argues that all of the other allegations of discrimination are not independently actionable because plaintiff never raised them in the administrative process, they were dismissed in the administrative process, or plaintiff did not exhaust the administrative remedies to cause them to be actionable.  Defendant also argues that even if her claims are deemed to be procedurally proper, plaintiff cannot support her

4

contention that she was discriminated due to her race or retaliated because of her race.

Plaintiff has opposed defendant's motion, arguing that her claims regarding the two assignments to Camden were properly exhausted at the administrative process, but at a minimum, disputed facts preclude the finding that those claims are time-barred. Plaintiff also argues that other incidents of discrimination may be considered as "background" facts to demonstrate defendant's discriminatory motives. Finally, plaintiff argues that she has presented sufficient disputed material facts for a jury to determine whether race was a motivating factor in the Camden assignments, and also in retaliation for filing an EEOC complaint in 2004.

## DISCUSSION

### A. Jurisdiction

Plaintiff brings claims for discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. This Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

### B. Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or

interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a). An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

   Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict

6

those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

### C. Analysis

#### 1. *Exhaustion issue*

Prior to bringing suit in federal court, a federal employee must exhaust the administrative remedies against her employer.  See 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.  For a federal employee, "this process entails: (1) making contact with an EEO counselor within forty-five (45) days of the alleged discriminatory action; (2) filing a formal complaint with the EEOC within fifteen (15) days from receipt of the agency's final decision; and then (3) appealing the agency's final decision to the EEOC or filing a civil action in the federal district court within ninety (90) days of the agency's decision."  Marley v. Donohue, 133 F. Supp. 3d 706, 716 n.16 (D.N.J. 2015); see also 29 C.F.R. § 1614.105(a)(1).  Dismissal is appropriate where an employee has failed to exhaust her administrative remedies.  Marley, 133 F. Supp. 3d at 716 n.16.  The required initial EEO contact and the subsequent filing of a formal complaint occur within the agency's administrative EEO program.  29 C.F.R. §§ 1614.102(c)(4), 1614.104-06.  This mandatory administrative

7

process provides the affected parties with an opportunity to explore the allegation of unlawful workplace activity and to determine whether the situation can be remedied without judicial intervention. Robinson v. Dalton, 107 F.3d 1018, 1020 (3d Cir. 1997).

Defendant takes great pains to parse out plaintiff's claims in order to decipher whether each one has met the exhaustion requirements, and he has included a chart to illustrate his findings. (See Docket No. 30-2 at 16-17.) Plaintiff does not specifically oppose defendant's arguments with regard to the "background" incidents, as she only intends to use them as support for her claims regarding the trips to Camden. Plaintiff opposes defendant's position on the timeliness of her Camden trips claims, arguing that defendant's evidence on this issue is equivocal at best. She also argues that because she relied upon prior counsel's representations that the Camden trips claims were being timely pursued in the administrative process, she is entitled to equitable tolling of the two-month delay in contacting the EEO counselor about the first incident.

The Court does not need to delve in the issue of whether plaintiff's claims regarding the Camden trips were properly exhausted in the administrative process, or whether plaintiff should be afforded the benefit of equitable tolling, because even accepting that those claims were deemed fully exhausted and

8

properly brought before this Court, they fail on their merits as a matter of law, as discussed next.

## 2. *Discrimination and retaliation claims*

Plaintiff's claims present two types of Title VII claims. With regard to her discrimination claim, in order to state a valid claim for disparate treatment on the basis of race, plaintiff must show: (1) she belongs to a protected class; (2) she suffered some form of adverse employment action; and (3) the adverse employment action occurred under circumstances that give rise to an inference of unlawful discrimination. Barnett v. New Jersey Transit Corp., 573 F. App'x 239, 243 (3d Cir. 2014) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)) (other citations omitted). An adverse or "tangible" employment action is "'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" Id. (quoting Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 761, (1998)).

As to plaintiff's retaliation claim, to establish a prima facie case of retaliation under Title VII, a plaintiff must show that: "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in

the protected activity and the adverse employment action." Moore v. City of Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006) (citation omitted).

With respect to "protected activity," the anti-retaliation provision of Title VII protects those who participate in certain Title VII proceedings (the "participation clause") and those who oppose discrimination made unlawful by Title VII (the "opposition clause"). Id. (citation omitted). For the "adverse employment action" element, a plaintiff must show that a reasonable employee would have found the alleged retaliatory actions "materially adverse" in that they "'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Id. (quoting Burlington Northern & Santa Fe Ry. Co., v. White, 548 U.S. 53, 67 (2006)) (explaining that the "antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm").

To establish the third element, a plaintiff must show a causal connection between the plaintiff's opposition to, or participation in proceedings against, unlawful discrimination, and an action that might have dissuaded a reasonable worker from making or supporting a charge of discrimination. Id. Additionally, a plaintiff must show that the temporal proximity of the protected activity and the employment action is "unduly

suggestive." Deans v. Kennedy House, Inc., 587 F. App'x 731, 735 (3d Cir. 2014) (citing Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 760 (3d Cir. 2004)) (finding that the plaintiff's termination more than two months after he filed his second EEOC charge not so close as to be unduly suggestive).

If a prima facie case is established, the burden of production shifts to the employer to present a legitimate, non-discriminatory reason for its actions. Parker v. Secretary United States Department of Veterans Affairs, --- F. App'x ---, 2017 WL 221786, at *2 (3d Cir. Jan. 19, 2017) (citing Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 193 (3d Cir. 2015)). If such a reason is offered, the burden shifts back to the plaintiff to demonstrate that the reason was merely pretext "and that retaliation was the real reason for the adverse employment action." Id. (quoting Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994) ("[T]he non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.'")). Although the burden of production shifts, "the plaintiff has the ultimate burden of persuasion at all times." Id. (citing Daniels, 776 at 193).

Plaintiff's discrimination and retaliation claims fail, for several reasons. First, plaintiff has not shown how the Camden

transportation and surveillance assignments constituted adverse employment actions.  The job description for her position sets forth the following requirements:

> Position [of Immigration Enforcement Agent] is located within the Department of Homeland Security (DHS), Immigration and Customs Enforcement Bureau (ICE).  This position is responsible for performing a variety of enforcement functions related to the investigation, identification, apprehension, prosecution, detention and deportation of aliens and criminal aliens, and apprehension of absconders from removal proceedings.  Incumbent regularly enters hostile situations and may be required to make decisions affecting the life, well[-]being, and/or civil liberties of aliens, the public, and other law enforcement officers, as well as impacting relations between the U.S. and other governments.
>
> All incumbents perform the first two major duties, and perform one or more of the remaining five major duties on a regular and recurring basis, for at least 25% of the time:
>
> 1. DEPORTATION, TRANSPORT and ESCORT.  [I]ncumbent leads or is a member of a team, responsible for processing and deporting or escorting aliens, under final orders of removal, to their country of citizenship. . . . These escorted aliens predominately fall under the aggravated felon class of removable aliens or are physically or mentally incapacitated, and are frequently hostile or actively antagonistic to such deportation. . . . .
>
> 2. DETENTION.  The incumbent performs detention program responsibilities identified in DHS standards, including, but not limited to: ensuring detainee care (physical, mental and civil rights), intake and outtake processing, counseling regarding personal and family members for detainees, and supervision and transportation (including prison pick-ups and medical and court transportation and security) of aliens detained in Agency custody. . . . .
>
> 3. JAIL CHECK and INSTITUTIONAL REMOVAL PROGRAM. . . .
> 4. PROSECUTION. . . .

>     5.   DETERMINING ALIENAGE and FUGITIVE OPERATIONS.
>     . . .
>     6.   OPERATIONAL SUPPORT/ BORCAP/ LAW ENFORCEMENT LIAISON.
>     . . .
>     7.   ALIEN CRIMINAL APPREHENSION PROGRAM(ACAP), LAW ENFORCEMENT AGENCY SUPPORT, MULTI-AGENCY TASK FORCES, QUICK RESPONSE TEAMS, DUTY OFFICER, etc.
>     . . .
>
>     - The incumbent carries firearms in the performance of their duties . . . .
>
>     - Working conditions may include potential for loss of life or bodily injury. This work is both physically and mentally demanding and stressful. The Immigration Enforcement Agent may be exposed to life threatening situations that include physically combative persons who may be carrying firearms or explosives. Working hours may be unstable and irregular and may include prolonged or non-traditional shifts. . . .

(Docket No. 30-13.)

Plaintiff claims that the assignments to travel to Camden were "extremely dangerous," where she was put in harm's way and she feared for her life. The Court accepts plaintiff's concerns about these assignments, but she has not shown how these assignments differed from the typical assignments required by Immigration Enforcement Agents as whole, or in the Marlton sub-office specifically. It is true that a supervisor's requirement that an employee perform the less desirable aspects of a job to a greater degree than other employees may be considered an adverse employment action. See, e.g., Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 70–71 (2006) ("Almost

every job category involves some responsibilities and duties that are less desirable than others. Common sense suggests that one good way to discourage an employee . . . from bringing discrimination charges would be to insist that she spend more time performing the more arduous duties and less time performing those that are easier or more agreeable."). Plaintiff, however, has only provided unsubstantiated statements that other agents, who were not African-American or who had not filed EEOC charges, were not given similar assignments.

Plaintiff states that, as of October 4, 2008, she had "been in this district for 11 years and know[s] who has been assigned, because that information is contained on the G-391 forms which list the details given to the agents." (Docket No. 33-5 at 3.) If the disparate assignments were documented in the G-391 forms as plaintiff says, plaintiff has not provided those forms to support her contention that (1) the Camden assignments were unusual; (2) the Camden assignments were extraordinarily dangerous; and (3) agents who were not African-American or had not filed EEOC charges did not receive such similar assignments. Plaintiff's unsupported allegations that she was ordered to perform dangerous assignments because of her race and EEOC complaint are insufficient to carry her burden of establishing the adverse employment action element of her prima facie cases for discrimination and retaliation. Cf., Rosetsky v. National

14

Bd. of Medical Examiners of U.S., Inc., 350 F. App'x 698, 700-01 (3d Cir. 2009) (finding meritless the plaintiff's assertion that she was subject to an adverse employment action when her supervisor assigned her additional clerical duties allegedly not referenced in her job description, while promoting other, younger employees to more substantive projects, because it was uncontested that the plaintiff's job description included "assist[ing] with other duties as assigned," as well as other tasks specifically designed to accommodate "support" needs of her manager, and that the plaintiff admitted that both younger and older employees were often responsible for performing clerical duties); Reynolds v. Department of Army, 439 F. App'x 150, 153 (3d Cir. 2011) (finding that a Performance Improvement Plan (PIP) that is within the plaintiff's job description and is comprised of directives relating to an employee's preexisting responsibilities, does not constitute an adverse employment action); Citta v. Borough of Seaside Park, 2010 WL 3862561, at *23 (D.N.J. 2010) (finding that plaintiff being required to perform janitorial/clean up duties in the basement of Borough Hall not an adverse action when basement clean-up was "something that needed to be done" and other officers in addition to plaintiff were assigned to this task); Haynes v. Smith, 2006 WL 543645, at *9 (D.N.J. 2006) (quotations and citation omitted) (where the transfer does not affect the job description or terms

15

of employment and has no objectively harmful or negative effects, it cannot be said that the transfer was adverse or disparate); see also Burlington Northern, 548 U.S. at 71 ("To be sure, reassignment of job duties is not automatically actionable.  Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." (internal quotations and citation omitted)).

    Second, even if the Court were to find that plaintiff established her prima facie cases for discrimination and retaliation, she has not provided evidence, beyond her unsupported allegations, to rebut defendant's legitimate reasons for requiring plaintiff to perform the Camden assignments.  With regard to the transportation of the breastfeeding detainee back to her home to feed her infant, plaintiff's supervisor testified that the situation had arisen one other time, and the same procedure was implemented – i.e., a breastfeeding mother detainee was transported to her home by female agents.  Plaintiff's supervisor also testified that he chose plaintiff and her colleague in this particular situation because they were professional, experienced female agents.

    Plaintiff does not directly rebut defendant's explanation for her assignment, other than to argue that the assignment was

16

unprecedented, her supervisor knew the mother was supplementing with formula so the baby would not starve, and that her supervisor sent her, and her African-American colleague, into a dangerous part of Camden because they are African-American and because plaintiff filed an EEOC complaint against him. These unsupported allegations are not sufficient to challenge the veracity of defendant's legitimate business reason for assigning plaintiff to this particular detail.[3]

With regard to the three surveillance assignments, defendant states, and plaintiff admits, that plaintiff was directed to perform surveillance to track an individual who previously had an ankle bracelet put on by plaintiff, and there were concerns that the individual might violate the conditions of his release on an ankle bracelet. Defendant states, and plaintiff admits, that four other agents accompanied her on these assignments. Other than feeling that the surveillance missions were dangerous, plaintiff has not shown how plaintiff's assignments were beyond typical job duties, intended to discriminate and retaliate against her.

In sum, when considering the job description for plaintiff's position as an Immigration Enforcement Agent, the

---

[3] Moreover, in addition to also being unsupported allegations, none of plaintiff's "background facts" cast doubt on defendant's reasons for selecting plaintiff for this assignment.

17

assignments she was directed to perform, and her supervisor's reasoning for selecting her for those assignments, plaintiff has not met her burden of production or persuasion to establish that her race or complaint with the EEOC were the motivating factors in her assignment to those transportation and surveillance details.

## CONCLUSION

For the reasons expressed above, defendant's motion to for summary judgment on all claims in plaintiff's complaint must be granted.  An appropriate Order will be entered.

Date: <u>February 8, 2017</u>             <u>  s/ Noel L. Hillman  </u>
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.